# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00298-CV

**Appellants Susan Lewis King and Austin King, M.D. // Cross-Appellant Ken Paxton, Attorney General of Texas**

**v.**

**Appellees, Ken Paxton, Attorney General of Texas; and The City of Abilene, Texas // Cross-Appellees, Susan Lewis King and Austin King, M.D.**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GN-16-001160, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## CONCURRING AND DISSENTING OPINION

Because I would affirm the trial court's summary judgment ruling that certain portions of the audio recordings during the time period that Mrs. King physically was outside of her home were subject to disclosure under the Public Information Act, I respectfully dissent to the portion of this Court's judgment that determined otherwise.

As framed by the Court's opinion, the dispositive question is whether Mrs. King's location during that time period was a "private space"—"a location in which a person has a reasonable expectation of privacy." *See* Tex. Occ. Code §§ 1701.661(f) (prohibiting law enforcement agency from releasing any portion of recording made in "private space"), 1701.651(3) (defining "private space"). The Court's opinion characterizes Mrs. King's location at that time as her "front porch" and relies on the "curtilage" of a home under Fourth Amendment jurisprudence

to conclude that a "porch" is a "private space" for purposes of section 1701.661(f) of the Texas Occupations Code. But the Fourth Amendment is concerned with unreasonable searches and seizures in the criminal law context, not the disclosure of information under the PIA. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").

"We . . . regard the area 'immediately surrounding and associated with the home'—what our cases call the curtilage—as 'part of the home itself *for Fourth Amendment purposes*.'" *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (emphasis added). "The 'basic purpose of this Amendment' . . . 'is to safeguard the privacy and security of individuals *against arbitrary invasions by governmental officials*.'" *Carpenter v. United States*, — U.S.—, —, 138 S. Ct. 2206, 2213 (2018) (quoting *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528 (1967)) (emphasis added); *see Jardines*, 569 U.S. at 6 ("At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from *unreasonable governmental intrusion*.'") (emphasis added). Neither party suggests that "unreasonable governmental intrusion" was involved here.

Moreover, "the Fourth Amendment protects people, not places." *Carpenter*, 138 S. Ct. at 2213 (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). "[T]he Fourth Amendment cannot be translated into a general constitutional 'right to privacy.'" *Katz*, 389 U.S. at 350. Yet, the majority attempts to do just that here by incorporating Fourth Amendment concepts

2

into the statutory definition of "private space"—a place. *See id.* at 351 (denouncing "effort to decide whether or not a given 'area,' viewed in the abstract, is 'constitutionally protected'"); *see also id.* at 350 (recognizing that Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all"). Thus, I find the majority's reliance on the criminal concept of "curtilage" to be imprudent.

I would apply the plain meaning of the statutory definition of "private space" to Mrs. King's undisputed location at the time of the audio recordings. *See Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) ("We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008))); *see also* Tex. R. Civ. P. 166a(c); *University of Tex. Sys. v. Paxton*, No. 03-14-00801-CV, 2017 Tex. App. LEXIS 3043, at *12—16 (Tex. App.—Austin Apr. 7, 2017, no pet.) (mem. op.) (describing standard of review in appeal from trial court's summary judgment ruling in PIA case). It is uncontroverted that she was outside of her home without a physical barrier between her location and the street. I would conclude that this location was not a "private space" as that phrase is defined in section 1701.651(3) of the Texas Occupations Code.[1] Thus, I would affirm the trial court's summary judgment ruling that the audio recordings during the time period in

---

[1] In conflict with the plain language of the statutory definition of "private space," the majority relies on Mrs. King's subjective expectation of privacy given her circumstances and desires at the time of the audio recordings. But Mrs. King's desire at the time of the recordings not to be where she was or to have the police leave her property is not relevant. The statutory definition is objective—"a location in which a person has a reasonable expectation of privacy." Tex. Occ. Code § 1701.651(3).

which Mrs. King was outside of her home were not excepted from disclosure pursuant to section 1701.661(f) of the Texas Occupations Code.

As to the remainder of the majority's resolution of this appeal, although I concur in its ultimate disposition, I cannot join its analysis. I fundamentally disagree with the majority's importation of criminal terms and concepts to resolve this civil appeal. Among my concerns are broadly worded statements in the Court's opinion such as "[a] welfare check is not a criminal investigation" and "[w]elfare checks are considered to be within an officer's 'community caretaking functions.'" Again, the phrase "community caretaking function" has applicability in the context of criminal cases challenging the reasonableness of searches and seizures under the Fourth Amendment. In my view, the term "community caretaking functions" has no role in resolving whether Mrs. King's records were excepted from disclosure under section 552.108(b)(2) of the PIA. *See* Tex. Gov't Code § 552.108(b)(2) (excepting from disclosure internal record of law enforcement agency in matter relating to law enforcement if internal record relates to "law enforcement only in relation to an investigation that did not result in conviction or deferred adjudication"). The analysis need go no further than to observe that the parties agree that the officers' interactions with Mrs. King, however characterized, were not at any time a criminal investigation.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Triana

Filed: June 6, 2019

4